IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

STEVEN D. GODFREY,

    Petitioner,

v.                                                                                          CASE NO. 4:04-cv-91-MMP-AK

JAMES MCDONOUGH,[1]

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent has filed his response, Doc. 10, and Petitioner has filed a reply. Doc. 11. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the writ be granted to the extent that Petitioner seeks to withdraw his plea and proceed to trial.

## BACKGROUND

The petitioner, Steven D. Godfrey, was charged with second degree arson. Doc. 10, Ex. A. On September 10, 2001, the parties appeared for trial, but before the proceedings began, Petitioner made several motions. In the first motion, Petitioner sought permission to present an intoxication defense, arguing that Petitioner had no recollection of the events at issue because he

---

[1]James Crosby is no longer the Secretary for the Department of Corrections, and his successor, James McDonough, is hereby substituted in his stead as Petitioner's custodian.

"was under a blackout experienced due to the effect of alcohol." Doc. 10, Ex. C at 115-16. The court denied the motion based upon the court's interpretation of state law and its finding that the statute was constitutional and did not violate due process. *Id*. at 116.  In his second motion, Petitioner moved to dismiss because the State could not "prove a prima facie case that arson has been committed here because of the fact that there is no damage, and additionally, the state can't prove the element of intent due to the intoxication defense." *Id*. at 121.  Citing *State v. Harrington*, 782 So.2d 505 (Fla. Dist. Ct. App. 2001), the court ruled the question of damage was one of fact for the jury and denied the motion to dismiss. *Id*. at 124.  Finally, Petitioner argued that the Prison Relessee Reoffender Act was unconstitutional, as it violated separation of powers, constituted cruel and unusual punishment, and denied Petitioner due process. *Id*. at 126. In denying the motion, the court specifically addressed only the separation of powers argument though it did also find that it "would not have any discretion to impose a sentence less than fifteen years...." *Id*. at 128-29.

With Petitioner's motions having been denied, he pled *nolo contendere* to second degree arson but reserved the right to appeal the denial of his motions. Doc. 10, Ex. B.  Petitioner was questioned by the court and was found to be entering the plea knowingly, freely, and voluntarily, and the plea was accepted. Doc. 10, Ex. C at 130-31.

Shortly thereafter, Petitioner appeared for sentencing. Initially, the State pointed out that at the plea hearing, it had submitted the paperwork "to classify Mr. Godfrey as a prison release re-offender" and "ask[ed] that [the court] sentence him as such." Doc. 10, Ex. D.  Petitioner had been previously incarcerated after pleading *nolo contendere* to burglary of a dwelling and grand theft. Doc. 10, Ex. C at 45-53.  When he was released from prison on September 3, 2000, he

signed the following warning notice: "You are hereby notified that if you commit or attempt to commit one of the following offenses withing three (3) years of your release from incarceration, you may be sentenced to the mandatory minimum sentencing provisions of s. 775.082, F. S., of the **Prison Releasee Reoffender Punishment Act**...(h) Arson...." *Id*. at 39 (emphasis in original). Finding that it had no discretion in the matter, the court classified Petitioner as a prison releaseee reoffender and reluctantly sentenced him to fifteen years imprisonment. Doc. 10, Ex. D.

Thereafter, Petitioner appealed. While the notice of appeal listed as grounds all three of the issues previously reserved, Doc. 10, Ex. E, the appellate brief presented only the issue of whether the smoke spot resulting from the fire was enough damage to support the arson conviction. Doc. 10, Ex. F. More specifically, Petitioner argued that because the smoke spot "was easily washed clean by the boarding house manager" and in the manager's words, "'No damage resulted,'" the State failed to make "a prima facie case for conviction and the trial court should have granted the motion to dismiss in violation of [Petitioner's] right to due process." *Id*.

In response, the State argued that because the extent of the damage resulting from the fire was not an element of arson, and because the State disputed Petitioner's "claim that there was no damage to the property, the question of whether there was damage as a result of the fire became an issue for the jury." Doc. 10, Ex. G. The court of appeal affirmed without written opinion. Doc. 10, Ex. H & I.

Petitioner then filed a motion for post-conviction relief.  Doc. 10, Ex. J.  In his motion, Petitioner claimed that he was denied effective assistance of counsel when he was "led to believe that in exchange for signing a plea agreement, that [the court] had the authority to dismiss charges of second degree arson for element of lack of damage to property or person."  *Id*.  According to Petitioner, he would not have signed the plea agreement "but for the ill advice of counsel."  *Id*.  The court denied the motion, finding the "transcript of the plea colloquy...the sentencing hearing...and the written plea agreement...conclusively demonstrate that [Petitioner] is entitled to no relief."  *Id*. at 12.

Petitioner's appeal of that order was unsuccessful.  Doc. 10, Ex. K & M.  He then moved for rehearing, Doc. 10, Ex. N, which was also denied. Doc. 10, Ex. O.

The instant petition ensued.  On this occasion, Petitioner presents one issue:

> On advice of counsel, Petitioner signed nolo contendere plea based on preserving an issue of fact, for further appellate review.  Petitioner later files for ineffective assistance of counsel after discovering that only issues of law dispositive may be preserved for appellate review, not issues of fact.
>
> Petitioner was set for trial and would have proceeded to trial had counsel not given Petitioner ill advice as to future appellate proceedings.

Doc. 1.  In response, Respondent concedes that the claim has been exhausted and that it is timely, but because Petitioner preserved the issue for appeal "[a]s correctly instructed by defense counsel," and then "actually appealed the denial of his motion to dismiss," he "has failed to establish that the trial court's decision denying his ineffective assistance of counsel claim was an unreasonable application of the Strickland v. Washington standard."  Doc. 10.

**DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court considering a habeas petition "may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412.

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The fact that the state court did not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Since Petitioner's only claim is that counsel was ineffective, a consideration of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for

determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far

between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001). "The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler,* 218 F.3d at 1313. "[O]missions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Id*. (citation omitted).

The two-part *Strickland* test is "applicable to ineffective-assistance claims arising out of the plea process," the only difference being that in the context of a plea, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "[T]he decision whether to plead guilty (i.e., waive trial) rest[s] with the defendant, and...counsel's advice...might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled." *Roe*, 528 U.S. at 485. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. *Hill* is likewise applicable when challenging counsel's effectiveness in advising a defendant to plead *nolo contendere*. *See Slicker v. Wainwright*, 809 F.2d 768, (11th Cir. 1987).

Under Florida law, a defendant may move to dismiss an indictment or information when there "are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." Fla. R. Crim. P. 3.190(c)(4). Second degree arson requires proof

of "damage" to a structure. *Higgins v. State*, 565 So.2d 698, 699 (Fla. 1990). Although the **extent** of that damage is not an element of the charge, "[w]hether there is damage that is the result of a fire so as to come within the prohibitions of the arson statute is a question for the trier of fact." *Harrington*, 782 So.2d at 506.

While counsel cannot be faulted for failing to anticipate a change in the law (if this was indeed a change), he should have been familiar with *Harrington*, which was decided on March 30, 2001, over five months before Petitioner's case came before the court for trial. He should also have known (1) that it takes very little refutation by the State to overcome a motion to dismiss, *see* Fla. R. Crim. P. 3.190(d) (motion to dismiss pursuant to subsection (c)(4) shall be denied if State denies with specificity "the material fact or facts alleged in motion to dismiss); *see also State v. Wall*, 445 So.2d 646, 649 (Fla. Dist. Ct. App. 1984) (State's "traverse need only *specifically apprise* the trial court of the material factual allegation(s) *in the motion to dismiss* which the state is denying") (emphasis in original), (2) that if the State disputed the issue of damage to the boardinghouse, the court would be bound by *Harrington* to find that the determination of "damage" was a factual matter for the jury, and (3) that if his client pled *nolo contendere*, he would be foreclosed from appealing the issue since it has long been the law in Florida that "questions of fact cannot be reserved for appeal upon a plea of nolo contendere." *Falco v. State*, 407 So.2d 203, 207 (Fla. 1981). Thus, counsel's recommendation that Petitioner plead *nolo contendere* to the second degree arson charge with the reservation of a factual issue about which he could not take an appeal was unreasonable and not within the bounds of what a reasonably competent attorney would have done under the circumstances. If Petitioner had proceeded to trial, he certainly could have argued to the jury that washing off a soot stain does

not amount to "damage" as contemplated by the arson statute, and indeed, given the alleged minor damage to the boardinghouse, Petitioner might even have been entitled to a lesser included offense instruction on criminal mischief, which carries a much lower sentence than the fifteen-year sentence he received by pleading *nolo contendere*. *See Meenaghan v. State*, 601 So.2d 307, 307 (Fla. Dist. Ct. App. 1992) (misdemeanor mischief is category one lesser included offense to arson charge, and criminal mischief resulting in damages less than $200 is second degree misdemeanor); Fla. St. Ann. § 806.13(1)(b) (criminal mischief is willfully and maliciously damaging by any means any real property belonging to another); Fla. St. Ann. § 775.082(4)(b) (prison relessee reoffender who commits second degree misdemeanor may be imprisoned for no more than 60 days). Furthermore, even if the jury had convicted Petitioner of second degree arson, his sentence would have been no greater, and at the very least, he then would have had an appealable issue that the evidence was insufficient to support a finding of guilt by the jury. As it stood, counsel had no appealable issues whatsoever, and the fact that he did perfect an appeal does not undermine the Court's conclusion that in light of the law in Florida at the time Petitioner entered his plea, counsel did not exercise reasonable professional judgment in his advice to Petitioner.

Having found that counsel acted deficiently in advising Petitioner to plead *nolo contendere*, the Court must now determine whether Petitioner was prejudiced by that advice. Petitioner clearly states that he would not have entered into the plea agreement and surrendered his right to trial by jury but for counsel's erroneous advice regarding his appellate rights. This is squarely within the definition of prejudice as contemplated by *Hill* and stands unrefuted by Respondent.

The Court is of course constrained by habeas law from granting the writ unless the state court's decision resulted in an unreasonable application of clearly established Supreme Court law. Even if this Court assumes that the lower court had the *Strickland* and *Hill* standards in mind when it denied the Rule 3.850 motion, as outlined above, the court unreasonably–not just erroneously or incorrectly--applied those principles to the facts before it, and thus the Court has no hesitation in recommending that the writ issue.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus be **GRANTED** to the extent that Petitioner seeks to withdraw his plea of *nolo contendere* in Cause No. 01-665 entered in the Circuit Court of Okaloosa County, Florida;

That Petitioner be allowed to **WITHDRAW** his plea;

That a trial in Cause No. 01-665 be **CONDUCTED** within ninety (90) days of the adoption of the Report and Recommendation.

**IN CHAMBERS** at Gainesville, Florida, this **31st** day of January, 2007.

                    s/ A. KORNBLUM
                    **ALLAN KORNBLUM**
                    **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**